# No. 16–55289

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

NOVATION VENTURES, LLC,

*Plaintiff – Appellant,*

v.

THE J.G. WENTWORTH COMPANY, LLC, A DELAWARE LIMITED
LIABILITY COMPANY, FORMERLY KNOWN AS JGWPT HOLDINGS, LLC;
THE J.G. WENTWORTH COMPANY, A DELAWARE CORPORATION,
FORMERLY KNOWN AS JGWPT, INC.; J.G. WENTWORTH S.S.C. LIMITED
PARTNERSHIP, A NEVADA LIMITED PARTNERSHIP; AND PEACH
HOLDINGS, LLC, A DELAWARE LIMITED LIABILITY COMPANY,
DBA "PEACHTREE FINANCIAL SOLUTIONS"
AND AS "OLIVE BRANCH FUNDING,"

*Defendants – Appellees.*

*On Appeal from the United States District Court for the Central District of California
Case No. 2:15-cv-00954-BRO-PJW · Honorable Beverly Reid O'Connell, District Judge*

## APPELLEES' ANSWERING BRIEF

Harold A. Barza
Michael E. Williams
Kristen Bird
Shahin Rezvani
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Attorneys for Defendants – Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to *Federal Rule of Appellate Procedure* 26.1, The J.G. Wentworth Company, LLC, The J.G. Wentworth Company, J.G. Wentworth S.S.C. Limited Partnership, and PeachHoldings, LLC, certify the following listed parties may have a pecuniary interest in the outcome of this case:

The J.G. Wentworth Company, LLC (named defendant);

The J.G. Wentworth Company (named defendant);

J.G. Wentworth S.S.C. Limited Partnership (named defendant);

PeachHoldings, LLC (named defendant);

J.G. Wentworth, LLC (subsidiary of The J.G. Wentworth Company, LLC);

Orchard Acquisition Company, LLC (subsidiary of J.G. Wentworth, LLC);

J.G. Wentworth Structured Settlement Funding II, LLC (subsidiary of Orchard Acquisition Company, LLC); and

PeachHI LLC (subsidiary of Orchard Acquisition Company, LLC).

Of the foregoing entities, The J.G. Wentworth Company has issued shares to the public, and owns approximately 54% of The J.G. Wentworth Company, LLC.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................1

COUNTER–STATEMENT OF ISSUES PRESENTED ON APPEAL....................4

STATEMENT OF JURISDICTION.............................................................5

COUNTER-STATEMENT OF THE CASE ..................................................5

    A.    The SAC's Allegations...............................................................5

    B.    The District Court's Decisions ...............................................11

STANDARD OF REVIEW ......................................................................13

SUMMARY OF ARGUMENT .................................................................14

ARGUMENT ........................................................................................17

I.    THE DISTRICT COURT PROPERLY DISMISSED THE ANTITRUST CLAIMS FOR FAILURE TO ALLEGE ANTITRUST INJURY ........................................................................................17

    A.    Antitrust Injury Is a Necessary Element of Novation's Antitrust Claims and Requires Harm of the Type the Antitrust Laws Were Intended to Prevent that Flows from Anticompetitive Conduct ................................................17

    B.    The District Court Properly Concluded Novation Failed to Allege a Cognizable Theory of Antitrust Injury ................................21

        1.    Novation failed to allege antitrust injury as a result of the acquisition ................................................................22

        2.    Novation failed to allege antitrust injury based on Appellees' post-acquisition advertising practices' alleged effect on consumers and the competitive process....................29

        3.    Novation failed to allege substantial foreclosure from the relevant market based on Appellees' post-acquisition advertising practices................................................32

    C.    Novation Could Not Allege Antitrust Injury for the Additional Reason that It Failed to Allege Any Unlawful or Anti-Competitive Conduct from Which the Alleged Injury Flowed ..........38

    1.     Appellees allegedly "bidding up" the cost of top spots of Google AdWords is not anti-competitive ..................................38

    2.     There is nothing anticompetitive about Appellees' failure to disclose common ownership to support antitrust injury.......41

    3.     Maintaining separate brands or using separate marks is not anticompetitive....................................................................44

II.    THE DISTRICT COURT PROPERLY RULED NOVATION DID NOT ALLEGE FACTS TO SUPPORT A LANHAM ACT FALSE ADVERTISING CLAIM ................................................................45

III.   THE DISTRICT COURT PROPERLY RULED NOVATION FAILED TO ALLEGE FACTS TO SUPPORT A CLAIM UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 ("UCL") ...................................................................50

IV.   DISMISSAL AT THE PLEADING STAGE AND DENIAL OF FURTHER LEAVE TO AMEND WAS PROPER.......................................51

CONCLUSION...............................................................................................53

REQUEST FOR ORAL ARGUMENT ....................................................................54

CERTIFICATE OF COMPLIANCE........................................................................55

STATEMENT OF RELATED CASES .....................................................................56

CERTIFICATE OF SERVICE ...............................................................................57

# TABLE OF AUTHORITIES

**Page**

## Cases

*321 Henderson Receivables Origination, LLC v. Red Tomahawk*,
172 Cal. App. 4th 290 (2009) ....................................................................7

*Agency Development, Inc. v. Med America Ins. Co.*,
310 F. Supp. 2d 538 (W.D.N.Y. 2004)........................................................47

*AK Metals, LLC v. Norman Indus. Materials, Inc.*,
2013 WL 417323 (S.D. Cal. Jan. 31, 2013) ..............................................49

*Alaska Airlines v. United Airlines*,
948 F.2d 536 (9th Cir. 1991) .....................................................................36

*Alberta Gas Chemicals Ltd. v. E.I. Du Pont De Nemours & Co.*,
826 F.2d 1235 (3d Cir. 1987) ...............................................................23, 25

*AlliedSignal, Inc. v. B.F. Goodrich Co.*,
183 F.3d 568 (7th Cir. 1999) .....................................................................24

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011) ................................................................13, 14

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*,
190 F.3d 1051 (9th Cir. 1999) ...................................................................18

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc.*,
108 F.3d 1147 (9th Cir. 1997) .......................................................42, 43, 44

*Architectural Mailboxes, LLC v. Epoch Design, LLC*,
2011 WL 1630809 (S.D. Cal. April 28, 2011) ...........................................46

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................11, 13, 46, 52

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985).................................................................................36

iv

*Atl. Richfield Co. v. USA Petroleum Co,*,
  495 U.S. 328 (1990)............................................................12, 24, 26

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
  457 F.3d 1062 (9th Cir. 2006) ......................................................48, 49

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................13, 14, 51, 52

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
  182 F.3d 1096 (9th Cir. 1999) ............................................................30

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007) ..............................................................33

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)..........................................................................24

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977)......................................................18, 19, 20, 22, 28

*Cal. v. Am. Stores Co.*,
  495 U.S. 271 (1990)..........................................................................24

*Cargill v. Monfort of Colorado*,
  479 U.S. 104 (1986)......................................................................20, 21

*Carrico v. City & Cty. of S.F.*,
  656 F.3d 1002 (9th Cir. 2011) ............................................................52

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ......................................................................50

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001) ..............................................................51

*ChriMar Systems, Inc. v. Cisco System, Inc.*,
  72 F. Supp. 3d 1012 (N.D. Cal. 2014)................................................50

*Committee on Children's Television v. General Foods Corp.*,
  35 Cal. 3d 197 (1983) ........................................................................51

*Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co.*,
99 F.3d 937 (9th Cir. 1996) ................................................................. 17

*DocMagic, Inc. v. Ellie Mae, Inc.*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010) ........................................ 50, 51

*Drop Dead Co. v. S.C. Johnson & Son, Inc.*,
326 F.2d 87 (9th Cir. 1963) ................................................................. 45

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992) ............................................................................. 33

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ............................................................. 52

*Expedia, Inc. v. Priceline.com Inc.*,
2009 WL 4110851 (W.D. Wash. Nov. 23, 2009) ................................. 47

*F.T.C. v. H.J. Heinz Co.*,
246 F.3d 708 (D.C. Cir. 2001) ............................................................. 24

*F.T.C. v. Whole Foods Market, Inc.*,
548 F.3d 1028 (D.C. Cir. 2008) ........................................................... 23

*Feitelson v. Google Inc.*,
80 F. Supp. 3d 1019 (N.D. Cal. 2015) ................................................. 33

*Foman v. Davis*,
371 U.S. 178 (1962) ............................................................................. 52

*Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ............................................................. 13

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
343 F.3d 1000 (9th Cir. 2003) ............................................................. 31

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997) ............................................................. 33

*Industrial Building Materials, Inc. v. Interchemical Corp.*,
437 F.2d 1336 (9th Cir. 1971) ............................................................. 28

*Infostream Grp. Inc. v. Avid Life Media Inc.*,
2013 WL 6018030 (C.D. Cal. Nov. 12, 2013) ...................................................49

*JTC Petroleum Co. v. Pisasa Motor Fuels, Inc.*,
190 F.3d 775 (7th Cir. 1999) ...........................................................................31

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ..........................................................................13

*LiveUniverse, Inc. v. MySpace, Inc.*,
304 F. App'x 554 (9th Cir. 2008).......................................................................37

*Love v. Basque Cartel*,
873 F. Supp. 563 (D. Wyo. 1995).......................................................................39

*Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*,
140 F.3d 1228 (9th Cir. 1998) ...................................................................17, 23

*Lucas v. Dep't of Corrections*,
66 F.3d 245 (9th Cir. 1995) .............................................................................53

*Matsushita Electrical Industries Co. v. Zenith Radio Corp*
475 U.S. 574 (1986)....................................................................................18, 19

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
804 F.3d 930 (9th Cir. 2015) .....................................................................12, 48

*Multifab, Inc. v. Arlanagreen.com*,
122 F. Supp. 3d 1055 (E.D. Wash. 2015)..........................................................48

*National Association of Pharmacy Manufacturers, Inc. v. Ayerst Labs.*,
850 F.2d 904 (2d Cir. 1988) .......................................................................43, 44

*National Collegiate Athletic Association v. Board of Regents*,
468 U.S. 85 (1984)..........................................................................................26

*Oltz v. St. Peter's Community Hospital.*,
861 F.2d 1440 (9th Cir. 1988) .........................................................................28

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
967 F. Supp. 2d 1347 (N.D. Cal. 2013)............................................................46

*Padilla v. Terhune,*
    309 F.3d 614 (9th Cir. 2002) ........................................................14, 38

*Pinhas v. Summit Health, Ltd.,*
    894 F.2d 1024 (9th Cir. 1988) ................................................................28

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.,*
    354 F.3d 1020 (9th Cir. 2004) ........................................................49, 50

*Pool Water Products v. Olin Corp.,*
    258 F.3d 1024 (9th Cir. 2001) ............................19, 23, 26, 38, 39

*ProMedica Health Sys., Inc. v. F.T.C.,*
    749 F.3d 559 (6th Cir. 2014) ................................................................24

*Rebel Oil Co. v. Atlantic Richfield Co.,*
    51 F.3d 1421 (9th Cir. 1995) ........................................................19, 38

*Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.,*
    778 F.3d 775 (9th Cir. 2015) ................................................................24

*Sprint Nextel Corp. v. AT&T Inc.,*
    821 F. Supp. 2d 308 (D.D.C. 2011) ........................................25, 31

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ............................................................................51

*U.S. v. Dentsply Intern., Inc.,*
    399 F.3d 181 (3d Cir. 2005) ................................................................33

*U.S. v. Reicher,*
    983 F.2d 168 (10th Cir. 1992) ............................................................39

*United States v. Phila. Nat'l Bank,*
    374 U.S. 321 (1963) ................................................................................24

*Universal City Studios, Inc. v. Sony Corp. of America,*
    429 F. Supp. 407 (C.D. Cal. 1977) ..................................................46

*Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko,*
    540 U.S. 398 (2004) ................................................................................32

*Wells Fargo & Co. v. ABD Ins. & Financial Services, Inc.,*
  758 F.3d 1069 (9th Cir. 2014) .................................................................46

*Weyerhaeuser v. Ross-Simmons Hardwood Lumber,*
  549 U.S. 312 (2007).....................................................................40, 41

*Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.,*
  951 F.2d 1158 (9th Cir. 1991) ..............................................................27

## Statutes

15 U.S.C. § 2 ................................................................................11, 17

15 U.S.C. § 18 ..............................................................................11, 17

15 U.S.C. § 18a ...................................................................................22

Cal. Ins. Code §§ 10134-10139.5 ...........................................................7

Cal. Ins. Code § 10136(a) ......................................................................7

Cal. Ins. Code § 10139.5 (f)(2) ...............................................................7

*California Business and Professions Code* Section 17200.............2, 4, 5, 12, 16, 50

Fed. R. App. P. 32(a)(7)(B) ...................................................................55

## Other Authorities

H. Kafele & M. Meeks, "Developing Trends and Patterns in Federal
  Antitrust Cases" ..............................................................................52

Irving Scher, *Antitrust Adviser,* § 3:66 at 3-309-3--310 (4th ed. 2014) .................23

Phillip E. Areeda et al., *Antitrust Law: An Analysis of Antitrust Principles and
  Their Application* ¶ 335f, at 73 (3d ed. 2007) ...............................................25, 44

## PRELIMINARY STATEMENT

This appeal arises from a final order of the Central District of California (O'Connell, J.) dismissing a Second Amended Complaint ("SAC"). Stripped of its hyperbole and unsupported conclusions, the SAC alleged the following facts:

- Prior to 2011, Peach Holdings, LLC (d/b/a Peachtree Financial Solutions – hereafter, "Peachtree") and JG Wentworth ("Wentworth") were separate companies. Each purchased structured settlements from individuals who wished to obtain lump sum payments in lieu of structured settlement payments.

- In 2011, Wentworth's parent, The JG Wentworth Company ("JGWC"), acquired Peachtree. Thereafter, Peachtree and Wentworth continued to operate their businesses using their respective brands and service marks, without affirmatively stating in their ads that the two entities were now under common ownership, and without aggressively competing with each other on price.

- After the acquisition, Peachtree and Wentworth continued to bid for the top three listing positions on Google AdWords' paid search listings, often obtaining two of the top three spots for one or more search terms. This forced Appellant Novation to bid and compete for those listing positions.

Novation claims it has been injured by the above because some customers looking to sell their structured settlements may search Google from small-screened mobile devices, where they only see the top two or three "Ads," and may not scroll down to see other results. Consumers may then obtain offers only from Peachtree and Wentworth without realizing they are commonly owned and without obtaining a quote from Novation or another competitor. As the district court properly held, Novation's SAC failed to allege facts sufficient to state a claim for relief under the federal antitrust laws, the Lanham Act, or *California Business and Professions Code* Section 17200.

First, regarding Novation's antitrust claims, Novation did not allege facts constituting antitrust injury, a necessary element. Antitrust injury requires a showing that a defendant engaged in unlawful conduct that caused harm to the plaintiff and that the harm caused is of the type that the antitrust laws were designed to prevent. Novation argues three types of harm: harm to consumers, harm to the competitive process, and harm from market foreclosure. None of these saves its antitrust claims. The acquisition alone did not injure Novation: it is well settled that any reduction in competition from an acquisition does not injure other competitors. Rather, it benefits competitors by reducing the competition they face. Indeed, Novation has conceded that the acquisition alone is not actionable.

Nor can Novation establish antitrust injury based on post-acquisition advertising and business practices that allegedly harm consumers. The law is clear: harm to consumers from reduced competition (*e.g.*, reduced choice, higher prices) does not establish antitrust injury to a horizontal competitor.

Novation's allegations of antitrust injury resulting from market foreclosure are not factually supported and implausible in light of its own allegations. Even if Appellees sometimes do obtain two of the top three Google AdWords spots for certain search terms, nothing prevents Novation or other competitors from obtaining those same spots if they are willing to pay for them (as the SAC's exhibits confirm). In any event, Novation concedes there are many other avenues to reach consumers, none of which are foreclosed to Novation or other competitors.

Moreover, Novation's SAC does not establish antitrust injury because it fails to allege anticompetitive conduct from which the alleged injury flows. If the alleged injury is caused by conduct that is neutral or procompetitive, antitrust injury is lacking. Novation conceded before the district court that it is not claiming the acquisition itself caused it harm. It also conceded Appellees' bidding for Google AdWords is not predatory (and thus not anticompetitive). The only alleged conduct remaining is Appellees' use of multiple brands and nondisclosure of common ownership to consumers in their Google Ads. But the common business

practice of using multiple brands and products without disclosing common ownership is not anticompetitive.[1]

Novation's allegations are similarly insufficient to support a false advertising claim. Failure to disclose common ownership does not constitute a false statement of fact, and Novation cannot identify any false statement of fact in Appellees' Ads. Because the Ads are clearly labeled as such, and contain no misrepresentations, there is no tendency to deceive consumers as a matter of law based on this Court's precedent.

Because Novation's federal claims are deficient, its Section 17200 claim predicated on those claims failed as well. The judgment should be affirmed.

## COUNTER–STATEMENT OF ISSUES PRESENTED ON APPEAL

1.    Did the district court properly dismiss Appellant's antitrust claims with respect to the acquisition of Peachtree by Wentworth for lack of antitrust injury when, under settled law, Appellant cannot assert antitrust injury based upon any alleged harm to consumers resulting from reduced competition and any reduction in competition would benefit and not harm Appellant?

---

[1]    Although Novation claims Appellees concede a number of facts, such as monopsony power, a dangerous probability of monopolization and a specific intent to monopolize (Appellant's Opening Brief, hereafter "AOB," 2), Appellees concede none of these facts. Rather, given the standard on a *Fed. R. Civ. P.* 12(b)(6) motion, Appellees focused their arguments in the motions to dismiss on the most glaring legal and factual defects in Novation's complaints which would mandate dismissal at the pleading stage.

2.     Did the district court properly find lack of antitrust injury when Appellant alleged Appellees bid for and obtained the top spots on Google AdWords without disclosing common ownership, but Appellant itself was free to bid for the same spots, and to reach potential sellers through alternative avenues and channels?

3.     Did the district court properly dismiss Appellant's Lanham Act Section 43(a) false advertising claim, when Appellant failed to allege a false statement but relied instead on an alleged failure to affirmatively reference the common ownership of Peachtree and Wentworth ?

4.     Did the district court properly dismiss Appellant's *California Business and Professions Code* Section 17200 claim for lack of a predicate violation?

5.     After three unsuccessful pleading attempts, did the district court abuse its discretion to dismiss the SAC without leave to amend?

## STATEMENT OF JURISDICTION

Appellees do not dispute Appellant's statement of this Court's jurisdiction.

## COUNTER-STATEMENT OF THE CASE

### A.     The SAC's Allegations

Novation's SAC alleged it and Appellees are competitors engaged in the business of "factoring" or buying structured settlement payment rights from

settlement recipients who do not wish to wait years for their annuitized payments. ER 65-66 ¶¶ 7-8. If an individual has a structured settlement whereby she is receiving a stream of future payments and needs greater access to cash, the factoring company will pay her "cash up-front and, in exchange, receives the right to receive some or all of [her] future settlement payments." ER 69–70 ¶ 21. "Typically," a consumer "will sell only a part of [her] future payments to raise cash for a specified need." *Id.* Purchase prices in such transactions can range from as little as $5,000 to $1,000,000 (or more). ER 74 ¶ 34.

Prior to August 2011, Wentworth and Peachtree were unaffiliated companies. At that time, Wentworth funded approximately 40–45% of the structured settlement factoring transactions completed annually in the United States, ER 66 ¶ 11, and Peachtree funded approximately 30–35% of such transactions completed in the US annually. *See* ER 66, 69 ¶¶ 11, 20.[2] Novation funded approximately 7% of such factoring transactions. ER 69 ¶ 20. In August 2011, JGWC acquired Peachtree, including its valuable brand and marks, and continues to maintain and advertise that brand. *Id.* ER 66, 68 ¶¶ 11, 15. Since the acquisition, Wentworth and Peachtree have been commonly owned and controlled by JGWC. ER 66 ¶ 11.

---

[2] Novation alleged Peachtree purportedly also does business under the trade name "Olive Branch." ER 65, 66 ¶¶ 7, 10.

Novation defined the relevant product market as the purchasing of structured settlement payment receivables from individual consumer sellers. ER 68 ¶ 16.

State laws routinely require the approval of a state court before one can buy structured settlement payment rights. ER 73 ¶ 29. A high percentage of all structured settlement factoring transactions take place in California. ER 71 ¶ 24. California, like most states, has adopted legislation to regulate, monitor and approve the sale or factoring of any structured settlement. ER 71 ¶ 24; Cal. Ins. Code §§ 10134-10139.5 ("Structured Settlement Transfer Act"). In California, "[n]o direct or indirect transfer of structured settlement payment rights [...] shall be effective [...] unless all of the provisions of [the SSTA] are satisfied." Cal. Ins. Code § 10136(a); 321 Henderson Receivables Origination, LLC v. Red Tomahawk, 172 Cal. App. 4th 290, 294 (2009). Transactions involving California residents must be submitted "to superior courts of the State of California for review and approval" and "[i]n each petition to approve a proposed transaction, a superior court judge is asked to find that the transaction is 'fair' and in the selling consumer's 'best interests.'" ER 71-72 ¶¶ 24-25.[3]

---

[3] Thus, Novation's claim that "[t]here are no posted or standard prices or reference rates published or available to sellers" (AOB 9) is not plausible; sellers, their advisors or brokers, and even Novation can see what is paid because the transactions must be submitted to, and approved by, the superior court. ER 71 ¶ 24; see also Cal. Ins. Code § 10139.5 (f)(2) (listing documents that must be filed with the court).

Prior to August 2011, Peachtree, Wentworth, Novation and others competed by, among other means, broadcast television ads and pay-per-click Internet advertising. *See* ER 66, 69 ¶¶ 11, 20. Novation alleged "[t]ypically, individuals (or their advisors) seeking to find a buyer for their structured settlement payment rights (or looking for a better priced alternative to a bid they have already received) will search the Internet using Google or another 'search engine.'" ER 74-75 ¶36. Novation alleged Internet search engines (including Google, Yahoo, and Bing) are the principal research tool available. ER 76 ¶ 40.

When a user searches Google, paid "ads" appear at the top (or sometimes the side) of the results page, separate from the native search results.[4] *See*, *e.g.*, ER 108. Google operates its AdWords advertising business as a dynamic online auction in which competing businesses bid against one another to pay Google a "per click" fee whenever (a) a Google user seeks information about a designated search term, (b) the advertiser's paid listing is displayed, and (c) the user "clicks" on the displayed listing and is taken to the advertiser's website or phone number. Novation alleged, all other things being equal, the higher the ranking of a paid search result on a user's desktop computer or mobile phone screen, the more likely the user will "click" on" the listing. ER 79-80 ¶ 55. Thus, advertisers using the

---

[4] Novation did not allege Appellees have any control over the native search results generated by Google, only that they bid for the pay-per-click "Ads."

AdWords system compete to achieve a relatively higher position in Google's "paid search" rankings, bidding more to obtain a higher ranking. ER 79-80 ¶ 55. Although a search may return hundreds of "pages" of results, Novation alleged "only the top listings on the first page of results are likely to be reviewed and clicked on." ER 74-75 ¶ 36. It also alleged, with the advent of smartphones, the majority of Internet searches are conducted on mobile phones, which offer room for only the top two or three results at a time. *Id*.

Novation contends that after the acquisition Peachtree and Wentworth continue to bid for Google AdWords – as they did before – often winning two of the top positions on certain keywords. However, the "Ads" do not disclose their common ownership. ER 81-82 ¶ 60. Novation claimed Wentworth and Peachtree consistently grab two of the top three search results by allegedly "coordinating" their Google AdWords "pay-per-click" bidding and budgets. ER 87-88 ¶ 85. Novation did not explain how this is done (nor is it plausible) but alleged it crowds out competitors and/or drives up the cost of being in second or third position in any given search, making it more difficult and expensive for Novation to be found by potential customers looking for genuinely competing offers. *Id*.

Novation alleged when consumers use Google, they assume each result they see is for a competing company. ER 82-83 ¶ 67. Thus, when Peachtree's and Wentworth's paid "Ads" appear in response to any particular consumer's Google

search, Novation alleges Appellees "actively mislead[] and deceiv[e] sellers." ER 83 ¶¶ 69-71.[5]

According to Novation, competition is reduced when consumers are diverted to Appellees' paid ads on Google, and "Novation is hurt because it has been deprived of the ability to offer that individual seller a competitive alternative." ER 82 ¶ 65. Novation asserts that when consumers mistakenly believe Wentworth and Peachtree are competitors, and therefore do not seek competitive bids,[6] Novation is "foreclosed from the process, and thousands of consumers are deprived of the benefits of the competitive bidding process." ER 86 ¶ 79. Novation contends those consumers have been "effectively deprived of true choice." ER 101 ¶ 139.[7]

Notably, Novation did not allege it is precluded from bidding on any of the hundreds of potential keywords available on Google AdWords, or that it could not win a top spot for its own Google "Ad" if it was willing to pay more than other bidders. Other competitors can and do bid and obtain such top listings, as the SAC's exhibits confirm. ER 108, 110 (showing competitor annuity.org in top

---

[5]    Novation alleged Appellees also violated Google's internal policies by having affiliated companies bidding on the same keywords (although there is no allegation that Google made such determination). ER 81 ¶ 59.

[6]    According to Novation, "some" sellers do not bother to obtain even a second bid; "relatively few" will bother to get a third bid; and "even fewer" will seek a fourth. ER 77-78 ¶ 48.

[7]    These conclusory allegations remain virtually unchanged from two prior versions of the complaint, which were dismissed by the district court with leave to amend.

spot).  Further, Google is not the only search engine consumers use.  ER 76 ¶ 40.
And, Novation alleged "[s]ome individuals seeking to sell their settlement
payments will respond to an advertisement seen on TV."  ER 74 ¶ 35.

Novation did not allege its market share decreased following the acquisition,
that Appellees' market share has increased, or that any other competitors are no
longer in the relevant market.

### B.     The District Court's Decisions

On February 1, 2016, the district court (The Hon. Beverly O'Connell)
granted Appellees' motion to dismiss the SAC with prejudice.  ER 1.  This
followed two prior dismissal orders on the original complaint and First Amended
Complaint ("FAC") for failure to state a claim.  Each prior order set forth the
court's evaluation of the alleged facts and properly applied the pleading standards
to conclude Novation had failed to state a claim.  The order granting dismissal of
the SAC with prejudice relied upon many of the same factual and legal infirmities
that plagued Novation's prior two complaints.

*First*, the court held Novation's factual allegations did not adequately allege
antitrust injury, as is required for a private plaintiff to bring a claim under Section
7 of the Clayton Act (15 U.S.C. § 18) and Section 2 of the Sherman Act (15 U.S.C.
§ 2).  Applying the pleading requirements established by *Ashcroft v. Iqbal*, 556
U.S. 662, 678-79 (2009), the court found no plausible facts to support antitrust

injury based on Novation's conclusory allegations of reduced competition, consumer harm, and market foreclosure.  ER 9-11.  The court held Novation could not rely on allegations of reduced competition or consumer harm to support its antitrust injury, and its market foreclosure theory is not factually plausible in light of Novation's own allegations and market definition.  ER 9-10 (citing *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 345 (1990)).

*Second*, the court dismissed the Lanham Act false advertising claim.  ER 12. It ruled Novation failed to allege a false statement of fact and Appellees' "Ads," clearly labeled as such, are not likely to deceive consumers as a matter of law.  ER 13 (citing *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 939 (9th Cir. 2015)).

*Third*, having found no predicate antitrust or false advertising claim, the court dismissed Novation's claim under *California Business & Professions Code Section 17200*.  ER 14-15.

*Finally*, in its third dismissal, the court denied further leave to amend finding it futile based on Novation's inability to cure the factual and legal deficiencies in two prior opportunities to amend.  After dismissing the claims with prejudice, the district court entered final judgment for Appellees on February 10, 2016.  ER 191.

## STANDARD OF REVIEW

This Court reviews the grant of a motion to dismiss *de novo*. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully,"; a complaint pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In determining plausibility, the Court is not prohibited from "drawing on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Further, the Court need not accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court's denial of leave to amend is reviewed for an abuse of discretion. *Alvarez v. Chevron Corp.*, 656 F.3d 925,

931 (9th Cir. 2011); *accord*, *Ebner v. Fresh, Inc.*, -- F.3d --, No. 13-56644 (9th Cir. Sept. 27, 2016).

This Court may affirm the district court "on any ground supported by the record, even if it differs from the reasoning of the district court." *Padilla v. Terhune*, 309 F.3d 614, 618 (9th Cir. 2002) (citation omitted).

## SUMMARY OF ARGUMENT

I.    Novation's antitrust claims do not state a claim under *Twombly*, because the facts alleged in the SAC do not give rise to a plausible claim of antitrust injury, an essential element.

*First*, Novation could not demonstrate antitrust injury to itself based on JGWC's acquisition of Peachtree in 2011.  Although consumers might be able to rely on reduced competition, higher prices, or reduced choice resulting from a merger or acquisition to support a claim of antitrust injury, a competitor cannot, as the Supreme Court, this Court, and countless other courts have explained. Antitrust injury to Novation is "counter-intuitive," as the district court found.  It is well-established as a matter of law and sound economic principle that a competitor, like Novation, gains an advantage from a reduction in competition.

*Second*, Appellees' post-acquisition advertising does not give rise to a plausible claim of antitrust injury to Novation.  Novation alleges that post-acquisition, Appellees consistently obtain the top two or three paid advertising

results on Google's AdWords and because these "Ads" do not reference Appellees' common ownership, consumers are misled and assume they are obtaining bids from competing companies. But, as noted above, a competitor cannot establish antitrust injury based on consumer harm. In addition, the SAC fails to establish a plausible claim of market foreclosure based on Novation's own allegations. As the court properly recognized, there are no plausible facts suggesting Novation (or other competitors) cannot obtain the top spots on Google's AdWords if willing to pay for them. And, as the district court correctly noted "[t]he fact that 'Novation is not able to bid on one of the top AdWord listings and keep its listing among the top search results,' (SAC ¶104), does not reasonably equate to Plaintiff's substantial foreclosure from the *relevant market*." ER 10 (emphasis added).

*Third*, the SAC fails to allege facts supporting a plausible claim of anticompetitive conduct by Appellees from which any purported injury flows, another requisite element of antitrust injury. Novation has conceded it cannot allege predatory bidding, and Novation's allegations of purportedly false advertising – based on Appellees' failure to disclose common ownership – fail to overcome the presumption in this Circuit that such advertising is not anticompetitive because it has only a *de minimis* effect on competition. Indeed, Novation fails to allege a single *false*, *affirmative* representation made by Appellees in their advertising. Dismissal should be affirmed on these grounds.

II.     Novation's false advertising claim fares no better.  Unable to identify any affirmative false factual statement, Novation is left with a failure to disclose common ownership in an ad, which is not actionable as a matter of law.  Further, Appellees' Ads, clearly labeled as such, do not create a tendency to deceive as a matter of law based on this Court's precedent.[8]

III.    Finally, Novation's inability to allege sufficient facts supporting its predicate antitrust or false advertising claims required dismissal of its claim under *California Business and Professions Code* Section 17200.

IV.     Novation repeatedly failed to plead facts, not generalizations or conclusions, to state legally and factually plausible claims.  After Novation's three attempts to allege plausible facts supporting its claims, and Novation's inability at oral argument to identify additional facts it could add by further amendment, the court correctly concluded further amendment was futile and denied leave.  Its judgment should be affirmed.

---

[8]     Although Novation's allegations also suggested a claim for trademark infringement, it conceded Appellees do not use any of Novation's marks.

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY DISMISSED THE ANTITRUST CLAIMS FOR FAILURE TO ALLEGE ANTITRUST INJURY

### A. Antitrust Injury Is a Necessary Element of Novation's Antitrust Claims and Requires Harm of the Type the Antitrust Laws Were Intended to Prevent that Flows from Anticompetitive Conduct

Novation asserted antitrust claims under Section 7 of the Clayton Act and Section 2 of the Sherman Act. Section 7 of the Clayton Act prohibits a corporation from acquiring the stock or assets of another corporation if the effect "may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18.[9] Section 2 of the Sherman Act prohibits monopolization and attempts to monopolize. 15 U.S.C. § 2. To state plausible claims for relief under either statute, a private plaintiff such as Novation must allege facts establishing antitrust injury. *Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.,* 140 F.3d 1228, 1233 (9th Cir. 1998) (antitrust injury required element for private recovery for alleged Section 7 violation); *Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co.,* 99 F.3d 937, 949 (9th Cir. 1996) (antitrust injury required element for private recovery for alleged Section 2 violation).

---

[9] Section 4 of the Clayton Act provides a right of private enforcement.

Antitrust injury is a concept unique to antitrust law that is intended to insure the injuries redressed are the type Congress intended to prevent.  As the Supreme Court has explained, an antitrust plaintiff:

> must prove more than injury causally linked to an illegal presence in the market.  Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.  The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.  It should, in short, be "the type of loss that the claimed violations . . . would be likely to cause."

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477, 489 (1977) (emphasis in original) (quoting *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 125 (1969)).

There are four requirements for establishing antitrust injury: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent."  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999).

A plaintiff may not simply allege unlawful conduct.  As the Supreme Court explained in *Matsushita Electrical Industries   Co. v. Zenith Radio Corp.*: "[R]espondents [cannot] recover damages for any conspiracy by petitioners to charge higher than competitive prices in the American market.  Such conduct would indeed violate the Sherman Act, but it could not injure respondents: as

petitioners' competitors, respondents stand to gain from any conspiracy to raise the market price in CEPs." 475 U.S. 574, 582-83 (1986).

In addition, an antitrust plaintiff must show the alleged "loss flows from an *anticompetitive* aspect or effect of the defendant's behavior." *Pool Water Products v. Olin Corp.,* 258 F.3d 1024, 1034 (9th Cir. 2001) (internal quotations, citation omitted). This is because "it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition. If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se." *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) (citations omitted).

Thus, for antitrust injury, a plaintiff must show the alleged injury flows from that which makes the conduct unlawful and is a type of harm the antitrust laws were intended to prevent. The Supreme Court's landmark decision in *Brunswick* illustrates these requirements. In *Brunswick*, competing bowling centers brought a Section 7 claim against Brunswick for acquiring and funding bowling alleys that would have gone out of business. Plaintiffs alleged the acquisitions would substantially lessen competition or create a monopoly in violation of Section 7. Plaintiffs argued Brunswick's size, as a result of these acquisitions, would give it the ability to drive smaller competitors out of business, lessening competition.

Plaintiffs sought the loss of income they would have realized had the failing bowling centers been allowed to go out of business. 429 U.S. at 480-81. The Supreme Court rejected plaintiffs' claim due to lack of antitrust injury because plaintiffs' alleged loss of revenue was caused by an *increase* in competition:

> respondents complain that by acquiring the failing centers petitioner preserved competition, thereby depriving respondents of the benefits of increased concentration. The damages respondents obtained are designed to provide them with the profits they would have realized had competition been reduced. The antitrust laws, however, were enacted for "the protection of *competition,* not *competitors.*"

429 U.S. at 488 (emphasis in original, citation omitted).

Similarly, the Supreme Court rejected Section 7 claims for lack of antitrust injury in *Cargill v. Monfort of Colorado*, 479 U.S. 104 (1986). The plaintiff Monfort, a competitor in the beef-packing industry, alleged a Section 7 violation based on a merger between the second- and third-largest beef packers. According to Monfort, the merger would allow Cargill to increase its market share at the expense of smaller competitors through a "price-cost squeeze," requiring Monfort to lower its prices and lose profitability. 479 U.S. at 114-15. The Supreme Court rejected this claim for lack of antitrust injury, concluding:

> [t]he kind of competition that Monfort alleges here, competition for increased market share, is not activity forbidden by the antitrust laws. It is simply [...] vigorous competition. To hold that the antitrust laws protect competitors from the loss of profits due to such price competition would, in effect, render illegal any decision by a firm to cut prices in order to increase market share. The antitrust laws require no such perverse result, for "[i]t is in the interest of competition to

permit dominant firms to engage in vigorous competition, including price competition."

*Id.* at 116 (citations omitted). "The logic of *Brunswick* compels the conclusion that the threat of loss of profits due to possible price competition following a merger does not constitute a threat of antitrust injury." *Id.* at 116-17.

### B. The District Court Properly Concluded Novation Failed to Allege a Cognizable Theory of Antitrust Injury

Novation's SAC asserted Novation suffered antitrust injury from JGWC's acquisition of Peachtree in 2011 and Appellees' post-acquisition practice of bidding on Google AdWords without disclosing in ads the companies are commonly owned.[10] Novation claimed the SAC alleged antitrust injury as a result of three types of harm: (1) reduction in competition due to the acquisition; (2) consumer harm from reduced prices and reduction in the vigor of the competitive process; and (3) substantial foreclosure from the relevant market resulting from Appellees' post-acquisition conduct. ER 101 ¶ 139. The district court properly concluded the SAC did not allege sufficient facts to establish a plausible claim that Novation had suffered cognizable antitrust injury under any of these theories.

---

[10] As discussed further in Section C, below, Novation also failed to allege any unlawful, anti-competitive conduct by Appellees – another necessary element of antitrust injury.

### 1. Novation failed to allege antitrust injury as a result of the acquisition

Novation argues on appeal that JGWC's acquisition of Peachtree, standing alone, is anticompetitive and violated Section 7 of the Clayton Act, ignoring the requirement that it still must allege antitrust injury to state a Section 7 claim. AOB 16. The SAC does not contain any factual allegations supporting a plausible claim that Novation suffered antitrust injury as a result of the acquisition.

*First,* the Supreme Court has made clear a merger (or in this case, an acquisition), standing alone, is not actionable. "Every merger of two existing entities into one, whether lawful or unlawful, has the potential for producing economic readjustments that adversely affect some persons. But Congress has not condemned mergers on that account; it has condemned them only when they may produce anticompetitive effects." *Brunswick*, 429 U.S. at 487. Indeed, mergers are often procompetitive and benefit consumers.[11] For this reason, "[c]ourts have carefully scrutinized enforcement efforts by competitors because their interests are not necessarily congruent with the consumer's stake in competition. Mergers that promote efficiency and lower prices in the marketplace, for example, may cause

---

[11] Because mergers can be either pro-competitive or anticompetitive, all acquisitions over a threshold dollar amount require notice to the Federal Trade Commission and Department of Justice, and expiration of the waiting period pursuant to the Hart Scott Rodino Act before the transaction is completed. *See* 15 U.S.C. § 18a.

economic loss to competitors." *Alberta Gas Chemicals Ltd. v. E.I. Du Pont De Nemours & Co.*, 826 F.2d 1235, 1239 (3d Cir. 1987). As one antitrust commentator observed, "[h]orizontal transactions [between competitors] are much more likely to disadvantage rivals by being procompetitive than by being anticompetitive." Irving Scher, *Antitrust Adviser*, § 3:66 at 3-309-3-–310 (4th ed. 2014).

Yet Novation boldly asserts "[t]here can be little doubt the acquisition of the second largest firm in the market by the largest firm in the market will tend to harm competition in that market" and "consolidation between the #1 and #2 competitors should be presumed anticompetitive on its face." AOB 16 n. 4 (quoting *F.T.C. v. Whole Foods Market, Inc.*, 548 F.3d 1028, 1043 (D.C. Cir. 2008)). That, however, is not the law. Contrary to Novation's argument, it is not sufficient for a private antitrust plaintiff simply to point to a high market share following an acquisition. *See*, *e.g., Lucas Automotive Engineering, Inc.,* 140 F.3d at 1232-33 (plaintiff lacked antitrust injury despite merger that resulted in 74% market share and foreclosed it from serving as a supplier of vintage tires because it "would have suffered the same injury had a small business acquired the exclusive right to manufacture and to distribute Firestone tires"). "Unlike in the FTC's action, [private] plaintiffs [...] must show they were *actually* injured by a lessening of competition." *Pool Water Products*, 258 F.3d at 1032 (citing *Associated Gen.*

*Contractors v. California State Council of Carpenters*, 459 U.S. 519, 535 (1983)); *see also Atlantic Richfield Co.*, 495 U.S. at 339 ("Antitrust injury does not arise for purposes of § 4 of the Clayton Act, […] until a private party is adversely affected by an *anticompetitive* aspect of the defendant's conduct […].") (emphasis in original). Thus, Novation's reliance on government enforcement cases (AOB 15-16) is inapposite because the government does not need to establish antitrust injury to challenge an acquisition based on a high market share – Novation does.[12]

*Second,* Novation's allegation that it suffered antitrust injury caused by a reduction in the "vigor of the competitive process" or harm to consumers as a result of the acquisition alone is fundamentally at odds with established antitrust law and economic theory. As a competitor, Novation actually benefits from reduced competition because there is one less entity against which it must compete.

---

[12] Most of the cases Novation cites (AOB 16-17, nn. 3, 4, 5 & 6) in support of this argument did not find antitrust injury in favor of a plaintiff that was solely a competitor. *See, e.g.*, *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.,* 778 F.3d 775, 781 (9th Cir. 2015) (injunction request joined by the government); *Cal. v. Am. Stores Co.,* 495 U.S. 271, 274 (1990) (plaintiff was the State of California); *United States v. Phila. Nat'l Bank*, 374 U.S. 321 (1963) (plaintiff was United States); *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) (plaintiff was United States); *F.T.C. v. H.J. Heinz Co.*, 246 F.3d 708 (D.C. Cir. 2001) (same); *ProMedica Health Sys., Inc. v. F.T.C.,* 749 F.3d 559 (6th Cir. 2014) (same); *AlliedSignal, Inc. v. B.F. Goodrich Co.,* 183 F.3d 568, 570-71 (7th Cir. 1999) (antitrust injury accepted on the pleadings for plaintiff who was a *purchaser* in addition to being a competitor).

"'[I]njury-in-fact . . . is absent when a plaintiff complains [only] that its competitors' merger [would be] illegal because it [would] increase[] market concentration unduly.'" *Sprint Nextel Corp. v. AT&T Inc.*, 821 F. Supp. 2d 308, 319 (D.D.C. 2011) (citing Phillip E. Areeda et al., *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 335f, at 73 (3d ed. 2007)).

As the Third Circuit noted in rejecting a Section 7 claim brought by one competitor against another:

> It is curious that Alberta would assert a loss by conduct of Du Pont which, if Alberta is to be credited, *reduced the number of suppliers in the marketplace*. If that action helps Du Pont as a producer, *it inevitably aids Alberta as well as every other producer*.

*Alberta*, 826 F.2d at 1243 (emphasis added). Here, Novation's claim is equally curious – and not plausible – as Novation also alleges Appellees no longer compete with each other after the acquisition. *See, e.g.,* ER 66 ¶ 11.

Relying on *Matsushita*, and the fundamental principle that a competitor is not hurt by a reduction in competition, a district court in the District of Columbia rejected Sprint's claim of antitrust injury arising from a merger of its competitors AT&T and T-Mobile. *Sprint Nextel Corp.*, 821 F. Supp. 2d at 319-20. As the court in *Sprint* aptly summarized: "[w]hen allegedly anticompetitive behavior '[has] the effect of either raising market price or limiting output,' and is therefore 'harmful to competition,' it 'actually *benefit[s]* competitors by making supracompetitive pricing more attractive.'" *Id.* at 319 *(*quoting *Matsushita*, 475

U.S. at 582-83) (emphasis in original). Thus, although a consumer might rely on a reduction in competition to claim antitrust injury, a competitor cannot do so because competitors stand to benefit from reduced competition, potentially resulting in higher prices or reduced choice to consumers.

Novation cites no authority remotely suggesting a competitor can rely on harm to consumers from reduced competition for purposes of antitrust injury. For example, Novation cites (AOB 29) *National Collegiate Athletic Association v. Board of Regents*, 468 U.S. 85, 107 (1984), for the proposition that "[w]hen an entity has market power to alter prices from competitive levels, and sustain that practice for an extended period, the entity's actions threaten consumer welfare." Although consumer welfare is the touchstone of the antitrust laws, that does not mean any competitor who can allege harm to consumers suffers antitrust injury. *See Pool Water Products, Inc.*, 250 F.3d at 1034-36 (recognizing the antitrust laws are designed to protect consumer welfare yet finding no antitrust injury suffered by a competitor due to alleged predatory pricing). "[T]he Supreme Court has 'decline[d] to dilute the antitrust injury requirement' where 'there is no need to encourage private enforcement by competitors' because '[i]f such a scheme causes the anticompetitive consequences detailed . . . consumers . . . may bring suit.'" ER 9-10 (citing *Atl. Richfield Co.,* 495 U.S. at 345). The *NCAA* case Novation cites

has no application here: the Supreme Court did not even address antitrust injury or suggest a competitor can rely on consumer harm to establish antitrust injury.

Novation also cites *Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.*, 951 F.2d 1158, 1163 (9th Cir. 1991), claiming this Court rejected the well-established limitation that a competitor may not rely on consumer harm for its own antitrust injury. AOB 33. The *Yellow Pages* case, however, does not reflect any such rejection of this principle. In *Yellow Pages*, the district court granted defendant summary judgment, finding plaintiffs lacked antitrust standing, in part because plaintiffs did not compete in the same relevant market as defendant. This Court reversed, finding sufficient evidence that plaintiffs and defendant did compete in the same relevant market and suffered antitrust injury as a result of defendants' change in policy to no longer allow plaintiffs to continue purchasing advertisements in defendants' directories. *Yellow Pages*, 951 F.2d at 1161-62. There was no finding or even suggestion the plaintiff's antitrust injury was premised on consumer harm. To the contrary, this Court found plaintiffs, as competitors, suffered direct injury from defendants' refusal to deal. *Id.* The holding in *Yellow Pages* does not undermine the legal and economic principle that a competitor cannot rely on alleged consumer injury to support antitrust injury.[13]

---

[13] Novation also cites three cases for the proposition that "this Court has repeatedly sustained an antitrust claim when stated by a competitor." AOB 34. That is not the inquiry here. The question is whether Novation, a competitor, can

*Third,* Novation did not allege plausible facts showing substantial foreclosure from the relevant market as a result of the acquisition itself. Nor could it. In fact, Novation is still in the same position it was in before the acquisition – bidding against Wentworth and Peachtree for search positions – and would be in that same position if Peachtree had not been acquired by JGWC (or if Peachtree had been acquired by some other company). *Brunswick,* 429 U.S. at 487 ("Respondents would have suffered the identical 'loss' but no compensable injury had the acquired centers instead obtained refinancing or been purchased by 'shallow pocket' parents."); *see also* ER 73-74 ¶ 32 (alleging Novation competed with Peachtree and Wentworth before). Indeed, just like the claim rejected in *Brunswick*, Novation's real complaint is that competition was *not* reduced because after the acquisition it still has to compete for search positions against both Wentworth and Peachtree in pay-per-click advertising. *Brunswick*, 429 U.S. at 488

rely on allegations of consumer harm to support its antitrust injury, and none of these cases stand for or support that proposition. In *Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024 (9th Cir. 1988), the issue was whether the plaintiff had alleged injury to competition in the relevant market, as opposed to injury to the defendant individually: "To maintain a successful antitrust action, Pinhas must show that the alleged conspiracy among the appellees did more than injure him; he must prove an injury to the competition in the relevant market." 894 F.2d at 1032. In *Oltz v. St. Peter's Community Hospital*, 861 F.2d 1440 (9th Cir. 1988), the issue was whether the relevant market was correctly defined and antitrust injury was not even presented on appeal. 861 F.2d at 1445-46 ("Reduced to its essence, St. Peter's position is that the district court erroneously directed a verdict as to the relevant market."). Nor was the issue of antitrust injury presented on appeal in *Industrial Building Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336 (9th Cir. 1971).

(rejecting antitrust injury where plaintiffs damages consisted of "the profits they would have realized had competition been reduced").

Novation's claim it suffered antitrust injury as a result of the acquisition "standing alone" (*see* AOB 15-16, 27, 30, 34-35) fails to state a plausible claim.[14]

> ## 2. Novation failed to allege antitrust injury based on Appellees' post-acquisition advertising practices' alleged effect on consumers and the competitive process

Novation's theory of antitrust injury based on Appellees' post-acquisition advertising rests on allegations that (1) Appellees consistently win two of the top three search results on Google AdWords (ER 81–82 ¶ 60); (2) consumers who use Google on mobile devices when looking for competitors rarely go beyond the top three paid listings and "relatively few" obtain more than two competing bids (ER 77-78 ¶ 48); (3) because Appellees do not disclose their common ownership, consumers allegedly think they have received two competing bids from separate entities when they have not (ER 86 ¶ 79); and (4) this relieves Appellees of the

---

[14]   In apparent recognition of this, Novation conceded to the district court it does not contend the acquisition alone caused antitrust injury.  SER 4-5; *see also*, ER 167, 170 ("[Novation] appears to concede that it is not relying on the merger itself to establish its antitrust injury.…[Novation] concedes that the merger alone does not constitute anticompetitive conduct […].").

pressure normally created by competitive pricing and causes consumers to pay higher prices (ER 89-90 ¶ 90).[15]

Accepting the allegations as true on a motion to dismiss, none of the harms alleged give rise to plausible antitrust injury to Novation. As discussed above, allegations concerning allegedly low prices paid to consumers, or other generalized allegations of reduced "vigor in the competitive process" do not plausibly support antitrust injury. Novation is a *competitor*, not a consumer, and the district court correctly recognized the law does not permit competitors to rely on allegations of consumer harm for their own antitrust injury. ER 9.

For example, in rejecting a Section 1 claim of a price-fixing conspiracy brought by a competitor, this Court explained that "[p]laintiffs have not alleged antitrust injury resulting from the price-fixing of ski packages and lodging accommodations. They are competitors to, rather than customers of, Defendants in the sale of these services. Thus, Plaintiffs stand to benefit from the fact that prices for those services are inflated." *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1102 (9th Cir. 1999). Thus, "[a]lleging harm to consumers, while relevant to showing an antitrust violation, is not sufficient to demonstrate antitrust injury; harm to *consumers* by way of increased prices is the type of injury the

---

[15]   Novation further alleges this chain of events also substantially forecloses Novation from the relevant market, allegedly causing antitrust injury. This is discussed below in Section I.B.3.

antitrust laws were designed to prevent, but it is not an injury-in-fact that *competitors* suffer." *Sprint Nextel Corp.*, 821 F. Supp. 2d at 319 (emphasis in original).

The district court properly recognized Novation cannot plausibly allege antitrust injury based on consumer harm, reduced choice, or lower prices paid by Appellees to consumers when buying structured settlement payments. ER 9-10. If anything, such reduced competition and consumer harm benefits Novation.[16] As quoted by the district court: "You want your competitors to charge high prices." ER 168 (citing *Sprint Nextel*, 812 F. Supp. 2d at 320 (quoting *JTC Petroleum Co. v. Pisasa Motor Fuels, Inc.*, 190 F.3d 775, 778 (7th Cir. 1999) (Posner, J.)).

Novation's allegations of antitrust injury based on purported consumer harm are not plausible for an additional reason. In California, where Novation alleges "a very large number and a high percentage of all structured settlement factoring

---

[16] Novation's "*passim*" recitation of platitudes from *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000 (9th Cir. 2003), is inapposite and unhelpful. As pointed out by the Ninth Circuit, that case "is not strictly a merger case, or a case involving the simple discontinuation of a product line, or one involving the termination of a distributor. To repeat, it is a case where the plaintiff has alleged an unlawful agreement, dressed up as a competitor collaboration, to kill off a product in order to end competition, and a case where the plaintiffs' business which used that product was directly and intentionally strangled in the consummation of that agreement." 343 F.3d at 1013. Here, there is no agreement among Appellees to kill off a product that is used by Novation in order to end competition. To the contrary, Novation complains that Appellees, and each of them, still offer their services to consumers post-acquisition. *See, e.g.*, ER 69-70 ¶¶ 17, 20, 21.

transactions take place," (ER 71 ¶ 24), a *court* must review and approve *any* proposed transaction between a consumer and a factoring company: only after finding the transaction is fair and in the consumers' best interest will the transaction consummate.[17] ER 71-72 ¶¶ 24, 25. California law protects consumers from being deceived or taken advantage of when selling structured settlement payments, and Novation's suggestion this regulatory scheme is insufficient is a matter for the legislature, not a competitor's antitrust claim. *See, e.g., Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 412 (2004) (where regulatory structure exists, "it will be less plausible that the antitrust laws contemplate such additional scrutiny").

### 3. Novation failed to allege substantial foreclosure from the relevant market based on Appellees' post-acquisition advertising practices

The court also properly rejected Novation's conclusory and implausible allegations of antitrust injury based on substantial market foreclosure. The court recognized market foreclosure could constitute antitrust injury to a competitor; however, Novation's own allegations confirm it cannot plausibly allege actionable market foreclosure here. ER 10-11.

---

[17] These allegations also undermine Novation's argument there is no price transparency in the relevant market; the terms of each structured settlement purchase are publicly filed and therefore can be (and are) reviewed and monitored by competitors, sellers, and their advisors or brokers.

Market foreclosure concerns "whether the challenged practices bar a substantial number of rivals or severely restrict the market's ambit." *U.S. v. Dentsply Intern., Inc.,* 399 F.3d 181, 191 (3d Cir. 2005). The alleged conduct must bar competition in a "substantial" part of the relevant market. *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1032 (N.D. Cal. 2015).[18] In *Feitelson*, the plaintiffs alleged Google's Android operating system had a 51.7% share of the U.S. smartphone market, but failed to explain how a "logical leap" from that allegation to substantial market foreclosure in the relevant market (defined as "general handheld search") was reasonable based on exclusivity agreements making Google the default search engine, when those agreements only covered a subset of Android devices. *Id.* Seeing no plausible relation between the subset of the market allegedly foreclosed and the larger relevant market defined by the plaintiffs, the district court dismissed the plaintiffs' Sherman Act claims. *Id.*

Novation's market foreclosure theory suffers the same infirmity. Novation asserted market foreclosure based on Appellees' coordinated bidding using

---

[18] Market foreclosure most often comes into play in cases concerning exclusive dealing arrangements. *See Dentsply Intern., Inc*,. 399 F.3d at 191. Here, no such arrangements are alleged. Thus the claims qualitatively differ from those in *Dentsply*, 339 F.3d at 191, *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 458 (1992), and *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1201 (9th Cir. 1997). Nor does this case resemble *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 313 (3d Cir. 2007), in which the foreclosure was based on "lock in" of an industry standard and subsequent refusal to license on FRAND terms.

multiple brands consistently to obtain two of the top three paid search results only on Google AdWords, which, it alleged crowds out competitors and causes Novation to "bid up" the cost of obtaining these top spots.  (ER 89, 93 ¶¶ 89, 104). It further alleged consumers looking for competing bids rarely go beyond the top three paid listings and normally obtain only two competing bids.  ER 77-78 ¶ 48. Consumers purportedly assume Appellees are separately owned and will therefore not solicit additional competing bids.  *Id*.  According to Novation, because consumers will not seek more than one or two bids (ER 77-78 ¶ 48), and in most instances those two quotes are allegedly from Appellees (ER 88 ¶ 86), consumers are deceived, and Novation does not get the chance to submit a competing bid (ER 86 ¶ 79).  Setting aside the fact there is nothing unlawful or anticompetitive about Appellees' alleged conduct (*see infra* Section I.C), Novation's allegations fail to state a plausible claim that Appellees foreclosed a substantial portion of the defined relvant market.

First, Novation defines the relevant market as "the purchasing of structured settlement payment receivables from individual consumer sellers."  ER 68-69 ¶ 16. By Novation's own definition, the relevant market is not limited to the top three paid advertising spots on Google's AdWords.  *Id*.  Thus, the district court correctly noted "[t]he fact that 'Novation is not able to bid on one of the top AdWord listings and keep its listing among the top search results,' (SAC ¶ 104), does not

reasonably equate to Plaintiff's substantial foreclosure from the *relevant market*." ER 10 (emphasis added). As the court explained, Novation "alleges that Appellees' conduct has prevented consumers from accessing competitors through Google's *pay-per-click* advertising. *Plaintiff does not explain how Appellees' alleged advertising scheme and deceptive acts reduce consumer choice in the relevant market—'the purchasing of structured settlement payment receivables from individual consumer sellers' in the United States.* […]." ER 9 (emphasis added). Further, one cannot reasonably infer "consumer choice is reduced […] particularly where the SAC also provides that companies such as [Appellees] and [Novation] can broadcast television ads to compete." *Id.*; *see also* ER 74 ¶ 35 ("Some individuals seeking to sell their settlement payments will respond to an advertisement seen on TV.").[19] Thus, Novation concedes other media outlets through which companies compete for consumers exist, such as television (ER 74 ¶ 35) and "another search engine" (ER 74-75 ¶ 36), and nothing suggests Novation is foreclosed from these outlets. *See* ER 66-68 ¶¶ 11, 14. At most, Novation suggests it is foreclosed from a single marketing tactic used by factoring

---

[19] Although Novation claims the court made an improper inference in Appellees' favor on this point (AOB 33), the SAC does not say consumers rely on internet advertising to the *exclusion* of television or other venues, and any such claim would be implausible and speculative. ER 74-75 ¶ 36 ("*Typically*, individuals (or their advisors) seeking to find a buyer for their structured settlement payment rights […] will search the Internet using Google […].") (emphasis added).

companies to attract potential sellers of structured settlement payments within the relevant market, not that it and others are foreclosed from the relevant market.[20]

Second, Novation's claim that it and other competitors are somehow foreclosed from the very specific marketing tactic at issue – the top paid search results on Google's AdWords – not only is irrelevant to show market foreclosure, it is not plausible based on Novation's allegations. The court correctly concluded nothing prevents Novation and other competitors from obtaining top spots on Google AdWords if they are willing to pay for them. ER 168; *see also* ER 120 ("Plaintiff's allegations still do 'not suggest that Plaintiff could not bid for and be awarded' those advertising spots.").[21] In fact, Novation's exhibits to the SAC confirm competitors are not precluded from obtaining the "coveted" top three

---

[20] Novation's suggestion that complete foreclosure is not required, citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), is beside the point. AOB 21-22. *Aspen Skiing* focused on whether the jury verdict finding defendant had engaged in monopolization was supported by the factual record. It did not address antitrust injury and, in any event, the district court did not require Novation to allege complete exclusion from the relevant market. Further, this case does not involve denial of access to an "essential facility" as was involved in *Aspen Skiing*. "[T]he essential facilities doctrine imposes liability when one firm, which controls an essential facility, denies a second firm reasonable access to a product or service that the second firm must obtain in order to compete with the first." *Alaska Airlines v. United Airlines*, 948 F.2d 536, 542 (9th Cir. 1991). Here, there are no allegations that Google AdWords is an "essential facility" or that Appellees somehow control access to Google AdWords.

[21] As explained further below, there is nothing unlawful or anticompetitive about Appellees' bidding practices and Novation concedes it cannot allege facts to establish predatory bidding.

search result spots for various search terms. One of Novation's exhibits shows the top paid-search result was for annuity.org, a competitor unaffiliated with Appellees. *See* ER 108, 110. Although Novation seems to suggest these search results are somehow unique or rare (AOB 22), they are the results Novation chose to include as exhibits and a Google search for similar keywords confirms such results are not unique or rare. Indeed, the very notion Appellees somehow consistently obtain every top spot at all times for every relevant keyword related to the purchase of structured settlements is facially implausible.[22] Novation's conclusory and implausible allegations of market foreclosure were properly rejected by the district court.

The district court properly concluded Novation failed to allege any cognizable harm to support a showing of antitrust injury despite three opportunities to do so.

---

[22] Novation takes issue with the district court's citation to *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008), for the proposition Novation failed to allege market foreclosure because any consumer looking for competing websites could simply type the website into their address bar. ER 10-11. Novation seeks to distinguish this case by claiming, unlike that case where MySpace's actions only affected its own website, "JGW's acquisition of Peachtree alone enabled monopoly power that JGW exploits to reduce output and choice and enjoy monopoly profits." AOB 26-27. This assertion does nothing to establish market foreclosure.

### C. Novation Could Not Allege Antitrust Injury for the Additional Reason that It Failed to Allege Any Unlawful or Anti-Competitive Conduct from Which the Alleged Injury Flowed

As noted above, antitrust injury also requires that Novation allege injury flowing from unlawful or anticompetitive conduct. *Pool Water Products,* 258 F.3d at 1034 (antitrust injury requires the alleged "loss flow[] from an *anticompetitive* aspect or effect of the defendant's behavior"); *Rebel Oil Co.*, 51 F.3d at 1433 ("To show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior, since it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition.")  Novation could not satisfy the antitrust injury requirement for the additional reason that it failed to allege facts supporting any unlawful or anticompetitive conduct by Appellees.[23]

### 1. Appellees allegedly "bidding up" the cost of top spots of Google AdWords is not anti-competitive

Novation alleged that by simultaneously bidding on the same keywords through Google AdWords, Appellees were "able to 'rig' the Google pay-per-click bidding system" which "has driven up the cost of being in the 1st, 2nd, or 3rd position so as to effectively preclude or minimize the competitive impact of other

---

[23]    The failure to allege anticompetitive conduct also provides an independent basis to affirm the dismissal of Novation's Section 2 claim because it is a separate element.  As mentioned, *supra,* this Court may affirm "on any ground by the record, even if it differs from the reasoning of the district court."  *Padilla*, 309 F.3d at 618.

entrants." ER 89 ¶ 89. Although the SAC alleged this conduct amounted to "bid rigging" and "predatory bidding" (ER 93 ¶ 102), the court rejected these arguments in dismissing the FAC and Novation conceded it could not allege the elements of such claims.[24] SER 2 ("Novation agrees with the Court (Dkt. 35 at 8) and Defendants […] that Novation cannot satisfy the standard for predatory pricing at the pleading stage.").[25] Nevertheless, Novation continues to suggest on appeal Appellees' bidding on Google AdWords was predatory and anticompetitive. AOB 20.

"The Supreme Court has made clear, however, that a decrease in profits from a reduction in a competitor's prices, so long as the prices are not predatory, is not an antitrust injury." *Pool Water*, 258 F.3d at 1035 (quoting *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 223-24 (1993)). For bidding

---

[24] In dismissing the FAC and addressing the assertions of "bid rigging" and "predatory pricing," the district court noted "predatory pricing is a practice capable of inflicting antitrust injury," but that Novation failed to plead predatory pricing or bidding in either the relevant market, or in the market for Google AdWords. ER 117-18. Further, bid rigging arises from "an *agreement between competitors* pursuant to which contract offers are to be *submitted to or withheld from a third party.*" *U.S. v. Reicher*, 983 F.2d 168, 170 (10th Cir. 1992) (citation omitted, emphasis added); *Love v. Basque Cartel*, 873 F. Supp. 563, 577 (D. Wyo. 1995) ("Without an illegally cooperative competitor, the plaintiffs' charge of bid rigging vanishes."). Here, Novation alleges Appellees are *not* competitors because they are commonly owned, so no such claim can lie.

[25] Similarly, Novation's counsel admitted as much in oral argument: "And the argument that we're trying to make a claim involving predatory pricing is something off the wall and totally invented." ER 24 at 5:17-22.

to be predatory, a plaintiff must "prove that the alleged predatory bidding led to below-cost pricing of the predator's outputs. That is, the predator's bidding on the buy side must have caused the cost of the relevant output to rise above the revenues generated in the sale of those outputs." *Weyerhaeuser v. Ross-Simmons Hardwood Lumber*, 549 U.S. 312, 325 (2007). Additionally, the plaintiff must prove "the defendant has a dangerous probability of recouping the losses incurred in bidding up input prices through the exercise of monopsony power. Absent proof of likely recoupment, a strategy of predatory bidding makes no economic sense because it would involve short-term losses with no likelihood of offsetting long-term gains." *Id.*[26]

Because Novation admittedly could not allege a claim for predatory bidding, there is nothing anticompetitive about Appellees' bidding strategy on Google AdWords. In fact, if, as alleged, Appellees are bidding up the cost of certain

---

[26] Even if Appellees bid up the cost for certain keywords as Novation contends, there are no allegations this leads to "below–cost pricing of [Defendants'] outputs", *i.e.*, the purchase of structured settlement payments from consumers. This requires the defendant pay so much for the input that it sells the output at a loss. *Weyerhaeuser*, 549 U.S. at 325 ("[T]he predator's bidding on the buy side must have caused the cost of the relevant output to rise above the revenues generated in the sale of those outputs."). To the contrary, Novation alleges Appellees' bidding up the price of AdWords allows Appellees to reap substantial rewards – *i.e.*, profits – by paying customers less when buying their structured settlement than if there is actual competition. ER 78 ¶ 51.

keyword searches, that would be procompetitive.  As the Supreme Court explained

in *Weyerhaeuser* :

> There are myriad legitimate reasons—ranging from benign to affirmatively procompetitive—why a buyer might bid up input prices. A more efficient firm might bid up input prices to acquire more inputs as a part of a procompetitive strategy to gain market share in the output market. . . .  There is nothing illicit about these bidding decisions.  Indeed, this sort of high bidding is essential to competition and innovation on the buy side of the market.

549 U.S. at 323–24.

Because there is nothing predatory about Appellees' bidding on Google AdWords, that could not constitute anticompetitive conduct from which Novation's alleged injury flowed.

### 2. There is nothing anticompetitive about Appellees' failure to disclose common ownership to support antitrust injury

Novation also attempted to rely on allegedly false advertising to establish anticompetitive conduct.  Novation alleged: "Although JG Wentworth advertises and presents itself to the public using (at least) three distinct brand names (JG Wentworth, Olive Branch Funding, and Peachtree), those brands are under the common ownership and control of The JG Wentworth Company – a fact discussed in materials targeting JG Wentworth's investor audiences, but not clearly revealed or disclosed in the brands' consumer–facing websites, TV advertising, or print materials."  ER 67-68 ¶ 14.

The court correctly ruled that for false advertising to constitute anticompetitive conduct, Novation had to overcome a presumption that the effect on competition was *de minimis*. ER 120–21, 170–71. As this Court has held, to overcome this presumption, Novation had to plead an affirmative representation that was "[1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals." *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997) ("*Harcourt*").

Novation's allegations do not even make it out of the gate. Most significantly, Novation fails to identify a single false, *affirmative* representation (AOB 35-37), which is factor one. Novation does not allege Appellees *affirmatively* state they are unaffiliated, only that they do not disclose their common ownership in ads.[27] ER 87 ¶ 84. As discussed in more detail below, Appellees' failure to disclose cannot support a false advertising claim. *See infra* Section II. In addition, Novation's allegations do not set forth plausible facts showing why Appellees' failure to disclose common ownership is not readily

---

[27] Indeed, Novation admits Appellees disclose their common ownership in some of their publicly available materials. *See* ER 67-68 ¶ 14.

susceptible to neutralization by Novation. *See* ER 78-80, 93-94 ¶¶ 51–55, 104, 106. Nothing in the SAC suggests Novation could not place a web page or ads on the Internet or otherwise place advertisements "exposing" the common ownership Appellees purportedly hide if it believed this was material to consumers. *See generally id.*[28]

Implicitly recognizing it cannot overcome the *de minimis* presumption, Novation argues it applies only to disparaging statements made about a competitor, citing *National Association of Pharmacy Manufacturers, Inc. v. Ayerst Labs*, 850 F.2d 904 (2d Cir. 1988) ("*Ayerst*"). AOB 36. But that case actually disproves Novation's point. In *Ayerst*, which this Court relied upon when adopting the *de minimis* presumption in *Harcourt*, the Second Circuit applied the *de minimis* presumption to an advertising letter regarding the merits of prescribing generic drugs. 850 F.2d at 916-17. Even though its allegations of false advertising were not based on disparaging comments about a competitor, the plaintiff was still required to overcome the presumption of a *de minimis* effect on competition to

---

[28] Novation further failed to plead facts showing the representation was made to buyers without knowledge of the subject matter – s*ee* ER 94 ¶ 106 – which is factor four in assessing whether the *de minimis* presumption is overcome. *Harcourt*, 108 F.3d at 1152. Novation also failed to plead facts showing Appellee's allegedly false representation had gone on for a prolonged period. *See* ER 94 ¶ 106.

prove anticompetitive conduct. *Id*.[29] Novation's allegations that Appellees failed to disclose their common ownership do not allege anticompetitive conduct to support antitrust injury.[30]

### 3. Maintaining separate brands or using separate marks is not anticompetitive

Novation also argues Appellees promote their "fleet of fake brands to decrease the likelihood [] prospective customers will find a genuinely competing bid." AOB 8. Again, Novation's argument rests on the notion that by using multiple brands while not disclosing common ownership, Appellees deceive consumers into thinking they have received two competing bids from separate entities when they in fact have not. ER 86 ¶ 79.

Notably absent from Novation's brief is any case holding that using multiple brands without affirmatively disclosing common ownership constitutes

---

[29] Moreover, nothing in *Harcourt* suggests the Ninth Circuit limits the *de minimis* presumption to disparaging statements about a competitor. 108 F.3d at 1152.

[30] Novation's conclusory allegation that Appellees also violate Google's internal policy regarding "double serving" is of no event. ER 80-81, 88-90 ¶¶ 56-59, 86, 90. Google or other companies may have any number of policies they create because they believe it makes their service more marketable or attractive to their customers. Anticompetitive conduct that gives rise to antitrust liability is not measured by a company's internal policies *vis a* vis its customers, but rather by its effect on competition in the relevant market. *See*, *e.g.*, Phillip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW § 782m (4th ed. 2015) ("It is not antitrust's purpose to regulate ordinary business contracts."). It simply does not follow that violation of such policies rises to the level of predatory antitrust liability, or a ticket to federal court, with the resulting high costs of discovery and litigation.

anticompetitive conduct.  *See generally* AOB 35-38.  To the contrary, at least one

decision in the Ninth Circuit suggests otherwise.  In *Drop Dead Co. v. S.C.*

*Johnson & Son, Inc.,* 326 F.2d 87 (9th Cir. 1963), this Court rejected an antitrust

claim based on the defendant's mass advertising and use of multiple brands, noting

"[a]ll of these acts described above are up to this date lawful acts, and constitute

the sort of aggressive competition and promotion that antitrust law seeks to

protect."  326 F. 2d at 96.  In fact, it is commonplace for companies to offer their

products and services under multiple brands appealing to different segments and

preferences of consumers.  Under Novation's view, it is anticompetitive for

General Motors, Fiat-Chrysler, Volkswagen, and Toyota to use multiple brands to

sell automobiles unless these companies affirmatively disclose their common

ownership in every piece of advertising they use.  That is not the law and Novation

cites nothing remotely suggesting otherwise.

Novation's failure to allege any actionable anticompetitive conduct from

which its alleged injuries flow provides an additional basis for finding no antitrust

injury, which is fatal to its Section 7 and Section 2 claims.

## II. THE DISTRICT COURT PROPERLY RULED NOVATION DID NOT ALLEGE FACTS TO SUPPORT A LANHAM ACT FALSE ADVERTISING CLAIM

False advertising under Section 43(a) of the Lanham Act requires (1) a false

statement of fact by the defendant in a commercial advertisement about its own or

another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception was material, in that it was likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products. *Wells Fargo & Co. v. ABD Ins. & Financial Services, Inc.,* 758 F.3d 1069, 1071 (9th Cir. 2014).[31]

Here, Novation does not allege any false statement of fact. It relies solely on Appellees' failure to disclose their common ownership when advertising on Google AdWords. ER 97-98 ¶¶122-24. A false advertising claim, however, does not exist for an alleged failure to disclose. *Universal City Studios, Inc. v. Sony Corp. of America*, 429 F. Supp. 407, 410 (C.D. Cal. 1977) ("Whether the cause of action created by [15 U.S.C. Section] 1125(a) is rooted in the limited context of 'passing off', or the somewhat broader realm of 'false advertising', it cannot be

---

[31] Novation had to allege facts that were more than "'merely consistent with'" liability. *Iqbal*, 556 U.S. at 678; *Architectural Mailboxes, LLC v. Epoch Design*, LLC, 2011 WL 1630809, at *2 (S.D. Cal. April 28, 2011). In addition, Appellees submit Novation had to meet the specificity requirements of Rule 9(b) for its false advertising claim. *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1365-66 (N.D. Cal. 2013). Nevertheless, the district court did not apply this more stringent standard in dismissing Novation's false advertising claim. ER 12-14.

said that as conceived or enacted the statute was designed to make all failures to disclose actionable.") (citations omitted); *accord, Agency Development, Inc. v. Med America Ins. Co.*, 310 F. Supp. 2d 538, 547 (W.D.N.Y. 2004) ("Plaintiff's proposed claim must fail because it cannot base a Lanham Act claim on the defendants' failure to disclose a fact."). The failure to allege a false statement of fact is fatal to Novation's false advertising claim. ER 12.

Novation suggests *Expedia, Inc. v. Priceline.com Inc.*, 2009 WL 4110851, at *3 (W.D. Wash. Nov. 23, 2009) (cited by the district court) holds that a false advertising claim exists for the failure to disclose when the nature and scope of the desired disclosures are not delineated and it is unclear what the false representation is. AOB 45-46. But that case does not so hold. To the contrary, the district court in *Expedia* "*assume[d] that plaintiffs have properly alleged a false or misleading representation of fact*, namely that Priceline's advertisements falsely claim that consumers can attain a 50% cost savings by using its fixed-price service when compared with plaintiffs' fixed-price service." *Expedia, Inc.*, 2009 WL 4110851, at *3 (emphasis added). The allegations here warrant no such assumption: Appellees' ads do not expressly state or imply Appellees are not commonly owned. ER 108, 110.

This claim fails for the additional reason that the SAC does not allege facts supporting the "tendency to deceive" element of false advertising. This element

resembles the "likelihood of confusion" element in a trademark infringement claim.  *See Multifab, Inc. v. ArlanaGreen.com*, 122 F. Supp. 3d 1055, 1066 (E.D. Wash. 2015) (treating likelihood of confusion and the tendency to deceive as identical elements).  Because Novation's false advertising claim involves keyword advertising on Internet search engines, the district court looked to this Court's recent decision in *Multi Time Machine, Inc.,* 804 F.3d at 937.  In analyzing the likelihood of confusion standard for trademark infringement there, this Court noted its analysis was similar to the evaluation of "claims of consumer deception when dealing with false advertising claims, [where] we have at least twice concluded – after a review of the label or advertisement at issue – that there was no likelihood of consumer deception as a matter of law because no reasonable consumer could have been deceived by the label/advertisement at issue in the manner alleged by the plaintiff."  *Id.* at 939.

Applying the *Multi Time Machine* decision to the facts alleged here confirms no tendency to deceive as a matter of law.  First, the relevant consumer is a reasonably prudent consumer accustomed to shopping online because the products for sale range in value from $5000 to up to $1,000,000 (or more) – amounts far larger than the value of the watches at issue in *Multi Time Machine*.  ER 74 ¶34.  Thus, confusion is less likely as sellers exercise more care and precision in their research.  *See, e.g.*, *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d

1062, 1076 (9th Cir. 2006) ("Confusion is less likely where buyers exercise care and precision in their purchases, such as for expensive or sophisticated items.").[32]

Further, Appellees' ads are clearly labelled "Ads" and contain no false or misleading statements in their text. ER 108, 110 ("Ad" appearing next to the linked domain for each site). Where as here, the nature of an "ad as an ad" is self-evident, no likelihood of confusion (or tendency to deceive) exists. *See, e.g.*, *Infostream Grp. Inc. v. Avid Life Media Inc.*, 2013 WL 6018030, at *5 (C.D. Cal. Nov. 12, 2013) (finding no likelihood of confusion where the defendants' ads were off to the side of actual search results under the heading "ads," and neither the ads nor the domain names of the sites advertised referenced plaintiff's marks); *AK Metals, LLC v. Norman Indus. Materials, Inc.*, 2013 WL 417323, at *6 (S.D. Cal. Jan. 31, 2013) (finding no likelihood of confusion where ads were clearly separated from non-sponsored search results and were labeled as ads "related to" search terms).[33]

---

[32]   The notion that consumers selling up to a million dollars in future payments (and an advisor who may help them do so) only use a Google search on their mobile phones and look no further than the first two or three paid search results thereon not only falls short of plausibility – its strains credulity.

[33]   Novation's reliance on initial interest confusion is misplaced. AOB 48-50. That doctrine has no application here. Initial interest confusion applies to trademark infringement cases where the plaintiff accuses the defendant of *using the plaintiff's mark* (or colorable variation thereof) to divert customers from the plaintiff's site to the defendant's site. *Playboy Enters., Inc. v. Netscape Commc'ns*

The court properly dismissed this cause of action for failure to state a claim.

## III. THE DISTRICT COURT PROPERLY RULED NOVATION FAILED TO ALLEGE FACTS TO SUPPORT A CLAIM UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 ("UCL")

"[A] violation of another law is a predicate for stating a cause of action under" Section 17200's unlawful prong." *ChriMar Systems, Inc. v. Cisco System, Inc.*, 72 F. Supp. 3d 1012, 1020 (N.D. Cal. 2014) (citation omitted); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 182-83 (1999). Because Novation failed to allege a violation of the antitrust laws or the Lanham Act, it could not maintain a 17200 claim under the "unlawful" prong.

In actions between direct competitors, "the word 'unfair' in [Section 17200] means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 187. This requires "some actual or threatened impact on competition," not just harm to a competitor. *Id.* at 186-87. Because Novation failed to allege an antitrust claim, its UCL claim based on unfair conduct failed as well. *See ChriMar Systems, Inc.*, 72 F. Supp. 3d at 1020; *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1147 (N.D. Cal.

---

*Corp.*, 354 F.3d 1020, 1024 (9th Cir. 2004). Novation does not allege Appellees infringed any trademarks of Novation. ER 95-100 ¶¶114-130.

2010) (because plaintiff failed to allege facts showing defendant's conduct violated the Sherman Act, any claims plaintiff "might be asserting under the UCL's unfair prong necessarily fail as well"); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001).

A business practice is "fraudulent" under the UCL if "members of the public are likely to be deceived." *Committee on Children's Television v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983) (citation, quotations omitted). The court properly concluded Appellees' ads do not have a tendency to deceive consumers and thus Novation cannot establish a UCL claim under the fraudulent prong either. ER 13-15. In addition, "a plaintiff must [also] plead and prove actual reliance to satisfy the standing requirement of [Section 17200]" *In re Tobacco II Cases*, 46 Cal. 4th 298, 309 (2009), and Novation makes no claim it has done so (AOB 50-52). Novation's lack of standing or injury in fact provides an alternative basis for dismissing this claim.

## IV. DISMISSAL AT THE PLEADING STAGE AND DENIAL OF FURTHER LEAVE TO AMEND WAS PROPER

Throughout its brief, Novation suggests dismissal of this case before allowing it adequate time to conduct discovery was improper. AOB 28, 30, 38-42, 51. Novation is wrong. It was Novation's obligation to satisfy the pleading requirements enunciated by the Supreme Court in *Twombly* and its progeny *before* conducting discovery. When a complaint fails adequately to state a claim, such

deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citation, internal quotations omitted). The Supreme Court has cautioned against permitting antitrust cases to proceed to discovery before a plaintiff demonstrates "plausibility" because of the high cost of discovery in antitrust cases in particular. *See Twombly*, 550 U.S. at 558 ("Thus, it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive.") (internal citation omitted). [34]

Having afforded Novation three opportunities to state a claim, the district court properly denied further leave as futile. *Carrico v. City & Cty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011) (leave to amend "is properly denied [...] if amendment would be futile"). Denial of leave to amend was proper after "repeated failure[s] to cure deficiencies by amendments previously allowed." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003). The SAC was Novation's third attempt to state a claim. The prior dismissal orders noted precisely what the deficiencies

---

[34] Dismissal of antitrust claims on the pleadings is not unusual. A survey conducted as of 2010 showed the post-*Twombly* dismissal rate for antitrust cases was 65% overall, with a 70% dismissal rate in the Ninth Circuit. H. Kafele & M. Meeks, "Developing Trends and Patterns in Federal Antitrust Cases After *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*," at 8-9 (Shearman & Sterling LLP April 2010).

were (*see generally* ER 111-25, 161-72), but Novation could not cure them (ER 1-15).  At oral argument on the motion to dismiss the SAC, Novation could not offer any additional facts if given further leave to amend, suggesting instead that the SAC "pass[ed] muster."  ER 34-37, at 15:4–18:1.[35]  The district court's denial of further leave was appropriate and not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, Appellees respectfully request the Court affirm the judgment in all respects.


DATED:  September 30, 2016          Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By: */s/ Michael E. Williams*
    Michael E. Williams
    Attorneys for Defendants–Appellees


---

[35]  Novation's reliance on *Lucas v. Dep't of Corrections,* 66 F.3d 245 (9th Cir. 1995) is misplaced.  AOB 27.  That case involved a reversal of a district court's *sua sponte* grant of summary judgment against a *pro se* prisoner that was based on materials outside the pleadings and denied the prisoner an opportunity to submit responsive evidence.

## REQUEST FOR ORAL ARGUMENT

Defendants-Appellees The J.G. Wentworth Company, LLC, The J.G. Wentworth Company, J.G. Wentworth S.S.C. Limited Partnership, and Peach Holdings, LLC request this Court hear oral argument on this appeal.

# CERTIFICATE OF COMPLIANCE

I certify, pursuant to *Fed. R. App. P.* 32(a)(7)(B) and Ninth Circuit Rule 32–1, that the foregoing Appellees' brief is proportionally spaced, has a typeface of 14 points and contains 13,066 words.

Dated: September 30, 2016      By  */s/ Michael E. Williams*
                                        Michael E. Williams
                                        *Attorneys for Appellees*

## STATEMENT OF RELATED CASES

There are no related cases pending in this Court.

## CERTIFICATE OF SERVICE

Ninth Circuit Case Number 16-55289

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 7, 2016.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: October 7, 2016                    By */s/ Michael E. Williams.*
                                              Michael E. Williams